# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| Anthony R. Petito | : | |
| Debtor | : | Case No. 19-17308 (JKF) |
| _____ | | |
| Anthony R. Petito | : | |
| Plaintiff | : | |
| v. | : | |
| Deutsche Bank National Trust Company | : | |
| Defendant | : | Adversary No. 19-0237 |
| _____ | | |

## MEMORANDUM OPINION

*Introduction*

     Before the Court is the Defendant's Motion to Dismiss the above captioned adversary proceeding. The Debtor opposes the motion. For the reasons which follow, the motion will be granted.[1]

*Counts*

     The complaint pleads five counts each of which seeks to avoid the Defendant's security interest in the Debtor's home. Of the five counts, they break down into the two

---

[1] Because the complaint seeks avoidance of the Defendant's interest in the Debtor's home on the alternative bases that it is the recipient of what is either a fraudulent or preferential transfer, this proceeding involves legal question which are within this court's "core jurisdiction." *See* 28 U.S.C. § 157(b)(2)(F), (H).

general theories of avoidance: fraudulent transfer under Bankruptcy Code § 544 and preferential transfer under § 547.

*Allegations and Background*

The Complaint alleges that in 2005 the Debtor obtained a loan in the amount of $250,000 for home repairs (¶ 5); that the Defendant Bank holds the mortgage on the Debtor's home (¶ 4); that in 2008 the Bank filed a mortgage foreclosure complaint in state court (¶¶ 7, 11); that the Bank alleged in the foreclosure proceeding that the Debtor refinanced the existing loan and obtained a new loan in the amount of $800,000 from Mortgage Lenders network (MLN) (*Id.*); that despite what is alleged in the foreclosure complaint the Debtor never "executed any documents to refinance or otherwise create an obligation to MLN at any time", and, therefore, the document memorializing the loan is a forgery (¶ 8); that the loan documents were also illegally notarized without his consent (¶ 9); that the "forged fraudulent and illegal notarized mortgage was subsequently assigned to the Defendant" (¶ 10); and that, notwithstanding the Debtor's attempt to defend the mortgage foreclosure action, the Bank obtained a judgment in mortgage foreclosure in October 2019 (¶ 12).

That appears to have prompted this bankruptcy filing just six weeks later. Less than two weeks after that, the Debtor filed this adversary proceeding.

*Arguments*

The Bank seeks dismissal of all five counts under Federal Rule of Civil Procedure 12(b)(1) and (b)(6).[2] It argues that Counts I through IV are barred by

---

[2] Made applicable to adversary proceedings by B.R. 7012(b).

considerations of federalism as well as by procedural rules of preclusion. Bank's Br. 2-7. Count V, on the other hand, is challenged on the basis that it lacks legal viability: one of the elements of that cause of action cannot be established. *Id.* 7-9.

*Counts I-IV and Subject*
*Matter Jurisdiction*

The Bank's federalism challenge is based on the *Rooker–Feldman*[3] doctrine. Application of that doctrine is a question of federal subject matter jurisdiction. *See Whiteford v. Reed,* 155 F.3d 671, 672 (3d Cir.1998). This is to say that, by raising *Rooker–Feldman,* the Bank is essentially moving to have Counts I-IV dismissed for lack of subject matter jurisdiction. *In re Stephens*, 2016 WL 1050950, at *2 (Bankr. E.D. Pa. Mar. 14, 2016)

The *Rooker–Feldman* doctrine implicates jurisdiction because it prevents federal district courts from sitting as appellate courts with regard to state court judgments. The doctrine stems from the statutory proposition that federal district courts are courts of original, and not appellate, jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Only the United States Supreme Court has original jurisdiction to review final judgments from a state's highest court. 28 U.S.C. § 1257(a). As the Supreme Court explained in *Exxon Mobil,* the *Rooker–Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced

---

[3] *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)

and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.,* 544 U.S. at 284, 125 S.Ct. 1517.

The Debtor appears to have anticipated the Bank's reliance on the *Rooker-Feldman* doctrine: the complaint pleads preemptively that the doctrine is inapplicable. ¶ 13. The Court is constrained to agree with the Plaintiff here. The *Rooker–Feldman* doctrine has no application to this complaint because the Debtor is not seeking to have this court review the merits of the foreclosure judgment. What the Plaintiff is trying to do here is to "avoid" that judgment. *See In re Hopkins,* 346 B.R. 294, 302 (Bankr.E.D.N.Y.2006) ("[t]he bankruptcy avoidance provisions represent specific bankruptcy legislation permitting federal courts to set aside state-court judgments in appropriate circumstances."); s*ee also In re Huie,* 2007 WL 2317152, at *4 (Bankr.E.D.Tex. Aug.8, 2007) (finding *Rooker–Feldman* doctrine did not bar § 522(f) claim to avoid state court judgment).

*Counts I-IV*
*and Preclusion*

Aside from the deference due state courts, the Bank argues that under preclusionary rules of procedure, the counts must be dismissed under F.R.C.P. 12(b)(6). It relies here on res judicata and collateral estoppel. Although both theories constitute affirmative defenses, each may be raised on a motion to dismiss for failure to state a claim if the defect appears on the face of the pleading. *See Brody v. Hankin,* 299 F.Supp.2d 454, 458 (E.D.Pa.2004) *rev'd on other grounds* 145 Fed.Appx. 768 (3d Cir.2005) ("Although it is an affirmative defense, res judicata may be raised in a Rule 12(b)(6) motion and such a motion is particularly appropriate if the defense is apparent

on the face of the complaint." *citing Rycoline Prod's. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir.1997)); *see also W.G. Nichols, Inc. v. Ferguson,* 2003 WL 22158794, at *2 n. 5 (E.D.Pa. Sept. 18, 2003) ("Collateral estoppel may be raised upon a Rule 12(b)(6) motion if the facts are admitted, uncontroverted or conclusively established so that nothing further can be developed by a trial of the issue."). The Bank explains that under both the doctrine of res judicata (claim preclusion) and collateral estoppel (issue preclusion) the Debtor may not now relitigate the legitimacy of the foreclosure judgment or the mortgage instrument itself. Bank's Br. 5-7.

*Res Judicata*

The doctrine of res judicata*,* or claim preclusion*,* is intended to "avoid piecemeal litigation of claims arising from the same events." *Churchill v. Star Enters.,* 183 F.3d 184, 194 (3d Cir.1999). "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action." *Id. quoting Rivet v. Regions Bank of La.,* 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998)(emphasis added).

Here, there is no risk of retrying the same action adjudicated by the state court. This complaint seeks avoidance of a transfer under specific Bankruptcy Code provisions. The state court proceeding was based on Pennsylvania foreclosure law. Specifically, that case was a proceeding against property (in rem) while this case proceeds against an individual (in personam). Because of those difference, this claim is not precluded because it has not yet been judged.

5

*Collateral Estoppel*

Neither is there a possibility of relitigating settled points. For issue preclusion to apply, four elements must be present: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 247–48 (3d Cir. 2010).

From the outset, the Court sees that the elements of this adversary proceeding differ from those in the foreclosure case. There, the issue adjudicated by that court was the Bank's right to foreclose on the mortgage. Enforcement of that right would entail the existence of a mortgage and the averment of default. *See* Pa.R.C.P. 1147. The issue before this Court is the Debtor in possession's right to avoid a transfer under specified Bankruptcy Code provisions and *applicable* non-bankruptcy law. Both the factual determinations, as well as the controlling law, are unrelated. So neither preclusion doctrine is appropriate here.

*Count V –*
*Preference*

That leaves the final count, which is challenged, but on a different basis: The Bank maintains that the Debtor cannot establish all of the elements for a preferential transfer. Subsection of § 547 provides that the trustee (here, the debtor-in-possession) may avoid a transfer of an interest of the debtor in property that was made-

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

6

> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> *(5) that enables such creditor to receive more than such creditor would receive if—*
>
> *(A) the case were a case under chapter 7 of this title;*
>
> *(B) the transfer had not been made; and*
>
> *(C) such creditor received payment of such debt to the extent provided by the provisions of this title."*

11 U.S.C. § 547(b) [emphasis added].

The Bank maintains that the Debtor will not be able to prove the fifth element. *See* Mot. ¶¶ 26-27. It requires proof that the transfer enabled to creditor to receive more than it would have had its claim been treated in a hypothetical Chapter 7 proceeding. 11 U.S.C. § 547(b)(5). The Bank explains that "[c]ourts have consistently ruled that, as a matter of law, the purchase of real property at a non-collusive Sheriff's Sale conducted under the auspices of state law cannot be avoided as a preferen[ce]." Bank.'s Br. 8. For that reason, it goes on to state, dismissal of such claims is "routine[ ]." *Id*.

The Court finds the Bank's reliance on that decisional authority to be misplaced.[4] The premise of those decisions is not relevant because they involved a mortgage holder

---

[4]It also mischaracterizes the law. The Court's own research reveals that case law is split as to whether the fifth preference element is satisfied when a secured creditor purchases collateral at a foreclosure sale for less than its fair market value. Some courts have applied the Supreme Court's rationale in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994) (holding that the price obtained at a properly conducted, noncollusive foreclosure sale is deemed to be a "reasonably equivalent value" for purposes of § 548) to preclude a preference action against a

7

who foreclosed *and then purchased* the property at a regularly conducted, non-collusive sheriff's sale. That is not plead here. All that is plead is that the Bank obtained a judgment in mortgage foreclosure. Thereafter, bankruptcy intervened before the property could go to sale.

*Transfer and the
Foreclosure Judgement*

That distinction compels this Court to return to first principles. It is a truism of avoidance law that there must be a transfer to be "avoided." Both statutes, §§ 544 and 547, contain the threshold element of a "transfer" of an interest of the debtor in property. So if, in this instance, no sale occurred, then where is it alleged that a transfer was made? That term is defined in the Bankruptcy Code to mean

> **(A)** the creation of a lien;
>
> **(B)** the retention of title as a security interest;
>
> **(C)** the foreclosure of a debtor's equity of redemption; or
>
> **(D)** each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--
>
> **(i)** property; or
>
> **(ii)** an interest in property.

---

purchaser at a Sheriff's Sale. *See, e.g.*, *In re Pulcini*, 261 B.R. 836, 844 (Bankr. W.D. Pa. 2001); *In re FIBSA Forwarding, Inc.*, 230 B.R. 334, 341 (Bankr. S.D. Tex. 1999), *aff'd*, 244 B.R. 94 (S.D. Tex. 1999). Other courts have found *BFP* inapplicable in the § 547 context, and deemed foreclosures avoidable even when the sale is noncollusive and otherwise compliant with state law. *See, e.g.*, *In re Whittle Dev., Inc.*, 463 B.R. 796, 802-03 (Bankr. N.D. Tex. 2011); *In re Villarreal*, 413 B.R. 633, 642 (Bankr. S.D. Tex. 2009); *In re Andrews*, 262 B.R. 299, 306 (Bankr. M.D. Pa. 2001); *In re Rambo*, 297 B.R. 418, 431-32 (Bankr.E.D.Pa. 2003). There is no Third Circuit decision on point.

11 U.S.C.A. § 101(54). Nothing about the entry of the foreclosure judgment would bring it within the definitions set forth above. An opinion from this district offers this cogent explanation:

> By definition, the foreclosing mortgagee already has a lien against the property being foreclosed. As such, the entry of a non-jury verdict in a foreclosure action does not effect a further transfer of the mortgagor's interest in the mortgage property. Indeed, not even the entry of a judgment in foreclosure—and here, only a non-jury verdict was entered—in favor of a mortgagee would effect a further transfer of the mortgaged property. The entry of judgment is a simply procedural prerequisite to a foreclosure sale of the Sellersville Property. It is the foreclosure sale that takes place after the entry of judgment that results in a "transfer" of the mortgaged property because the sale alters the mortgagee's legal and beneficial interest in the property. *See In re Rouse,* 48 B.R. 236, 240 (Bankr.E.D.Pa.1985) (at conclusion of sheriff's sale, purchaser obtains equitable interest in the subject property, with legal title passing upon acknowledgment and delivery of the sheriff's deed); *Matter of Russell,* 8 B.R. 342, 345 (Bankr.W.D.Pa.1980) (same). There is no foreclosure sale at issue in this case.

*See In re Funches*, 381 B.R. 471, 497 (Bankr.E.D.Pa.2008)

*Transfer and the*
*Mortgage Instrument*

Where the Complaint does allege a colorable transfer is in the granting of a mortgage. That would constitute a creation of a lien as set forth above. However, it is the Debtor's main contention that the signature on the mortgage loan documents was forged and the acknowledgment is invalid. This is crucial because Pennsylvania law provides that title does not pass on a forged document. *See Harris v. Harris,* 428 Pa. 473, 239 A.2d 783, 784 (1968); *see also Bennerson v. Small,* 842 F.2d 710, 714 (3d Cir.1988). Thus, no transfer occurred, and if that is the case then the Plaintiff cannot state a cause of action under either §§ 544 or 547.

9

*Summary*

Because the Debtor's complaint is based on avoidance law, his failure to have alleged a transfer which might the subject of avoidance is fatal to his claim. For that reason the Complaint will be dismissed but without prejudice.

An appropriate order follows.

BY THE COURT

Dated: February 24, 2020

Jean K. FitzSimon
United States Bankruptcy Judge

Copies to:

David A. Scholl, Esquire
Law Office of David A. Scholl
512 Hoffman Street
Philadelphia, PA 19148

Keri P. Ebeck, Esquire
Bernstein-Burkley
707 Grant Street
Suite 2200 Gulf Tower
Pittsburgh, PA 15219